IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KARIN KIRKSEY ZANDER,       )
                            )
            Plaintiff,      )
                            )
    v.                      )       1:14CV857
                            )
SAXON MORTGAGE SERVICE, INC., )
MORGAN STANLEY & COMPANY, INC., )
and OCWEN FINANCIAL         )
CORPORATION,                )
                            )
            Defendants.     )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Karin Kirksey Zander ("Plaintiff"), proceeding pro se, has asserted various claims under North Carolina state law regarding the reporting of a foreclosure proceeding. This matter comes before this court on three motions: (1) Plaintiff's Motion to Remand (Doc. 20); (2) a Motion to Dismiss filed by Defendant Ocwen Financial Corporation ("Ocwen") (Doc. 10); and (3) a Motion to Dismiss filed by Defendants Morgan Stanley & Company, LLC[1] ("Morgan Stanley") and Saxon Mortgage Service, Inc. ("Saxon") (Doc. 29).

This court has carefully considered Plaintiff's Motion to

---

[1] As Defendant Morgan Stanley explains, "Plaintiff name[d] 'Morgan Stanley and Company, Inc.' in the Amended Complaint. Morgan Stanley & Co., Inc. was merged into Morgan Stanley & Co, LLC on or about June 1, 2011." (Notice of Removal (Doc. 1) at 1 n.1.)

Remand ("Plaintiff's Motion"), Defendants' responses in opposition (Docs. 28, 32, 33), and Plaintiff's reply (Doc. 35). For the reasons stated fully below, this court will deny Plaintiff's Motion. In addition, this court has carefully considered both Motions to Dismiss filed by Defendants (Docs. 10, 29), their supporting documents (Docs. 11, 30, 31, 40, 43), and Plaintiff's responses (Docs. 22, 27, 36, 37, 42). For the reasons stated fully below, this court will grant Defendants' motions and dismiss the present action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  **BACKGROUND**

Plaintiff commenced the present action[2] in Durham County Superior Court on September 17, 2014, against Defendants Saxon,

---

[2] The present action is a continuation of a related case before this court, 1:13CV1141 (the "initial action"). Plaintiff, proceeding pro se, commenced the initial action by filing a complaint against Saxon and Ocwen in Durham County Superior Court on November 25, 2013. Ocwen removed the action to this court on December 27, 2013 based on federal question jurisdiction. (1:13CV1141 (Doc. 1).) Ocwen then moved to dismiss this action pursuant to Rule 12(b)(6) on January 3, 2014. (1:13CV1141 (Doc. 8).) Saxon joined Ocwen's motion to dismiss on January 13, 2014. (1:13CV1141 (Doc. 15).) Saxon filed its Answer to Plaintiff's Complaint on January 24, 2014. (1:13CV1141 (Doc. 17).) On August 26, 2014, this court entered a Memorandum Opinion and Order and Judgment granting the Motions to Dismiss for Failure to State a Claim filed by Defendants Ocwen and Saxon, dismissing Plaintiff's Fair Credit Reporting Act ("FCRA") claims, and remanding the other claims back to state court. (See 1:13CV1141 (Docs. 28, 29).) The Fourth Circuit has since affirmed that decision. See Zander v. Saxon Mortg. Servs., Inc., 599 Fed. Appx. 521, 522 (4th Cir. 2015).

Morgan Stanley, and Ocwen (collectively "Defendants"). Morgan Stanley removed the action to this court on October 9, 2014, pursuant to both diversity and federal question jurisdiction. (Morgan Stanley's Removal Notice (Doc. 1) at 1.) On October 17, 2014, Ocwen filed a Motion to Dismiss for Failure to State a Claim and a corresponding Memorandum. (Docs. 10, 11.) On October 20, 2014, Plaintiff filed a Motion for Entry of Default against Ocwen, claiming Ocwen's motion was not timely. (Doc. 15.) On October 21, 2014, Ocwen filed a Response in Opposition to the Entry of Default and a Motion for Extension of Time and to Deem Motion to Dismiss and Supporting Memorandum Timely Filed. (Docs. 16, 17.) Per this court's November 6, 2014 Text Order, the court requested that any response by Plaintiff to Ocwen's Motion to Deem Motion to Dismiss Timely Filed be filed by November 21, 2014. Plaintiff timely filed her response in opposition. (See Doc. 25.) In addition, Plaintiff filed a Motion to Remand to State Court. (Doc. 20.)

On November 25, 2014, this court held a status conference. At that status conference, this court denied Plaintiff's Motion for Entry of Default and granted Ocwen's Motion for Extension of Time and to Deem Motion to Dismiss and Supporting Memorandum Timely Filed (Doc. 17). In addition, this court set a filing schedule allowing Plaintiff twenty days to file supplemental

- 3 -

briefing stating "specific facts upon which [Plaintiff] relies to allege that any reporting of the institution of foreclosure proceedings was false, fraudulent, misleading, or not legitimate." (Minute Entry 11/25/2014.) Due dates for any supplemental responsive pleadings were also set at the status conference, and this court extended the response deadline as to Plaintiff's Motion to be due on the same date as any supplemental pleadings were filed. (Id.) Plaintiff filed her Supplemental Brief on December 15, 2014. (Doc. 27.) On December 30, 2014, all Defendants filed briefs in opposition to Plaintiff's Motion to Remand. (Docs. 28, 32, 33.)

On January 15, 2015, Plaintiff filed a Reply in Response to Motion to Remand to State Court. (Doc. 35.) Also on January 15, 2015, Plaintiff filed a Motion for Entry of Default against Morgan Stanley and Saxon for not complying with the scheduling order. (Doc. 38.) For the reasons fully stated in this court's January 22, 2015 Order, this court denied Plaintiff's Default Motion against Morgan Stanley and Saxon and amended the pleading schedule. (Doc. 39.) In accordance with the January 22, 2015 Order, all parties subsequently submitted Replies and Reponses (Docs. 40, 42, 43), and the present motions are ripe for review. This court will first address Plaintiff's Motion to Remand and then turn to Defendants' Motions to Dismiss.

- 4 -

## II.  **MOTION TO REMAND**

### A.  **Standard of Review**

"Federal courts are courts of limited jurisdiction, and [must] presume that a cause lies outside this limited jurisdiction." Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 583-84 (4th Cir. 2012). "The burden of establishing federal jurisdiction is placed upon the party seeking removal. Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citations omitted).

A state court action may be removed by a defendant to federal district court only if the state court action could have been originally filed in federal district court. 28 U.S.C. § 1441. Generally, a case may be filed in a federal district court if there is "federal question" jurisdiction under 28 U.S.C. § 1331 or diversity of citizenship under 28 U.S.C. § 1332. Accordingly, "a defendant may remove a case to federal court if: 1) the parties are diverse and the statutory requirements for diversity jurisdiction are met; 2) the face of the complaint raises a federal question; or 3) on the basis of a narrow exception to the well-pleaded complaint rule known as the

- 5 -

'complete preemption doctrine.'" <u>Chappell v. Int'l Bhd. Elec.</u>
<u>Workers Local Union 772</u>, Civil Action No. 3:14-cv-02153, 2014 WL
4748607, at *1 (D.S.C. Sept. 23, 2014).

   **B.   <u>Analysis</u>**

   Morgan Stanley removed the present action to this court on
October 9, 2014, alleging both federal question and diversity
jurisdiction. (Removal Notice (Doc. 1) at 1.) The first
iteration of this action was originally commenced in state
court, removed based on federal question jurisdiction, and
eventually remanded back to state court. See <u>supra</u> note 2.
Morgan Stanley was not a defendant in the original complaint but
was added as a defendant when Plaintiff filed an amended
complaint in Durham County Superior Court on September 17, 2014.
(<u>See</u> Removal Notice, Ex. 1, State Court Record as to Morgan
Stanley (Doc. 1-1).) Plaintiff filed her Motion to Remand on
October 23, 2014. (Pl.'s Mot. to Remand ("Pl.'s Mot.") (Doc.
20).)

   Plaintiff asserts four arguments in support of her motion
to remand: (1) Morgan Stanley is bound by this court's
August 26, 2014 Memorandum Opinion and Order and Judgment in the
initial action in this court (1:13CV1141); (2) removal is barred
pursuant to this court's prior 28 U.S.C. § 1367(c) ruling, which
is the "law of the case"; (3) removal is improper pursuant to 28

- 6 -

U.S.C. § 1441; and (4) removal is sought for an improper purpose and in bad faith. (Id.) This court will address Plaintiff's arguments in that order.

### 1. Morgan Stanley is not bound by this court's August 26, 2014 Memorandum Opinion and Order and Judgment in the initial action (1:13CV1141)

Plaintiff asserts that removal is improper in the current action because, "defendant Morgan Stanley [] is clearly in privity with defendant Saxon [] and a real party-in-interest in this action." (Pl.'s Mot. (Doc. 20) at 1.) Plaintiff argues that this privity causes Morgan Stanley to be bound by this court's August 26, 2014 Memorandum Opinion and Order and Judgment in the initial action that granted then Defendants Ocwen and Saxon's Motions to Dismiss for Failure to State a Claim, dismissed Plaintiff's FCRA claims, and remanded the other claims back to state court. Plaintiff "submits that the identities of the parties in the first and still pending removal action, case number 1:13-cv-01141, are unquestionably the same as the parties here in the second removal case number 1:14-cv-00857." (Id. at 3.) Plaintiff goes on to argue that because Saxon and Morgan Stanley are the same party, Morgan Stanley has been on notice of this action since it originally commenced with the filing of the initial action between Plaintiff and Saxon. (Id. at 4.)

Plaintiff's argument does not have a sound basis in law. Morgan Stanley was not a party to the initial action and did not become a party until Plaintiff filed an Amended Verified Complaint on September 17, 2014, after this court remanded the initial action. Morgan Stanley filed its Notice of Removal pursuant to 28 U.S.C. § 1446(b) on October 9, 2014 (see Removal Notice (Doc. 1)), and Plaintiff concedes this removal was timely. (See Pl.'s Mot. (Doc. 20) at 5.) Morgan Stanley responded to Plaintiff's Motion (Doc. 28), citing United States v. Martinez, in which the Supreme Court held, "For obvious reasons, a party brought into court by an amendment, and who has, for the first time, an opportunity to make defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court." United States v. Martinez, 195 U.S. 469, 473 (1904). Until Morgan Stanley was made a party to the lawsuit, Morgan Stanley could not assert its removal rights. Thus, Morgan Stanley is not bound by any action they were not a party to, as is the case here.

### 2. **Removal is not barred pursuant to this court's prior 28 U.S.C. § 1367(c) ruling which is the "law of the case"**

Plaintiff next argues that this court's remanding of the initial action between the parties bars Morgan Stanley from removing the present action. Plaintiff references the doctrine

- 8 -

of "law of the case." (Pl.'s Mot. (Doc. 20) at 5.) "[T]he doctrine of law of the case restricts a court to legal decisions it has made on the same issues in the same case." MacDonald v. Moose, 710 F.3d 154, 161 n.10 (4th Cir.), cert. denied, ____ U.S. ____, 134 S. Ct. 200 (2013). Jurisdiction in the initial action was based on federal question. Currently, Morgan Stanley seeks removal based on diversity. Morgan Stanley notes in its response:

> This Court's previous order dismissed Plaintiff's Fair Credit Reporting Act claims and "decline[d]" to exercise supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367. The issue of this Court's diversity jurisdiction under 28 U.S.C. § 1332(a) was not raised in the original removal filing and was not decided by this Court.

(Morgan Stanley's Resp. to Pl.'s Mot. to Remand (Doc. 28) at 4 (alteration in original) (citations omitted).) When faced with the same issue, a district court in this circuit did not allow the plaintiffs' "law of the case" argument to prevail.

> The Plaintiffs . . . argue that, because this Court already determined that it did not have subject matter jurisdiction over this case, the law of the case doctrine bars the Defendants from raising a different legal theory upon which to now base jurisdiction. Because the Defendants removed on grounds that were not considered — much less decided — in the Court's October 5, 2012 remand opinion, the law of the case doctrine has no relevance here.

Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 959 F. Supp. 2d 783, 794 n.26 (D. Md. 2013) (internal quotations and

citations omitted) (citing <u>Carter v. Monsanto Co.</u>, 635 F. Supp. 2d 479, 485 (S.D.W. Va. 2009) ("Where the question at issue has not already been decided in the case, explicitly or by necessary implication, the law of the case doctrine does not apply."). In the present action, diversity jurisdiction is presented for the first time and there is no "law of the case" on this topic.

### 3. <u>Removal is proper pursuant to 28 U.S.C. § 1441</u>

Plaintiff next argues that her Amended Verified Complaint relies "exclusively on state law and is, therefore, not removable." (Pl.'s Mot. (Doc. 20) at 7.) Plaintiff cites <u>Beneficial National Bank v. Anderson</u> for the proposition that she is the "master of the claim" and can "avoid federal jurisdiction by exclusive reliance on state law," <u>see</u> <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 12 (2003) (Scalia, J., dissenting), attempting to bolster her argument that removal is improper in the present action due to the state law torts alleged in Plaintiff's complaint. However, Plaintiff fails to point out that her citation comes from the dissent and that the majority in <u>Beneficial National Bank</u> specifically held, "As a general rule, <u>absent diversity jurisdiction</u>, a case will not be removable if the complaint does not affirmatively allege a federal claim." <u>Id.</u> at 6 (emphasis added).

- 10 -

Morgan Stanley removed the present action under both federal question and diversity jurisdiction. Plaintiff makes no claims contesting diversity jurisdiction in the present action. Therefore, there is no evidence to suggest that Morgan Stanley's removal based on diversity jurisdiction is improper in the present action.

### 4. Removal is not sought for an improper purpose or in bad faith

Plaintiff's final argument in support of remand is that "[t]he Notice of Removal is a desperate attempt with unsupported conclusory allegations that new federal questions have been added." (Pl.'s Mot. (Doc. 20) at 8.) Morgan Stanley's Notice of Removal was based on both diversity and federal question jurisdiction. (See Removal Notice (Doc. 1) at 1.) The conditions for this court's exercise of diversity jurisdiction exist in the present action. (See id. at 2-3.) As the Fourth Circuit has explained, "Since diversity always vests original jurisdiction in the district courts, diversity also generates removal jurisdiction." Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). Therefore, there is no basis for this court to find that the Removal Notice was filed in bad faith.

In addition, Plaintiff claims that the removal is "intended to enable Saxon to escape the consequences of impending default for its failure to timely file an answer in the previous removal

- 11 -

action case number 1:13-cv-01141." (Pl.'s Mot. (Doc. 20) at 8.)
This portion of Plaintiff's Motion reasserts arguments that this
court addressed in favor of Saxon on November 5, 2014.[3] (Order
1:13CV1141 (Doc. 39).) For the reasons previously articulated in
that Order, this court did not find Saxon in default.
Additionally, other than Plaintiff's privity arguments, it is
unclear why any timeliness issues with Saxon are informative to,
or binding on, Morgan Stanley's present attempt to remove the
action.

Morgan Stanley is a newly-named defendant to an ongoing
dispute. As a newly-named defendant, Morgan Stanley has the
right to remove the action to federal court if the statutory
prerequisites exist and the filing is timely. In her Motion for
Remand, Plaintiff does not argue that the parties are not
completely diverse or that the amount in controversy is not met.
Plaintiff also concedes that Morgan Stanley's Removal Notice was
timely filed. (Pl.'s Mot. (Doc. 20) at 5.) Morgan Stanley filed
its Notice of Removal within thirty days of being served with
the Verified Amended Complaint.

In addition, the one-year absolute bar does not prevent
diversity removal. "In diversity cases, the [removal] statute
explicitly safeguards against . . . strategic delay[s] by

---

[3] In fairness, Plaintiff's present Motion was filed before
this court issued that order.

erecting an absolute bar to removal of cases in which jurisdiction is premised on 28 U.S.C. § 1332 'more than 1 year after commencement of the action.'" Lovern v. Gen. Motors Corp., 121 F.3d 160, 163 (4th Cir. 1997) (quoting 28 U.S.C. § 1446(b)). The initial action was filed on November 25, 2013 in Durham County Superior Court. This date is the absolute earliest this action could be considered to have commenced. Morgan Stanley filed its Notice of Removal on October 9, 2014, less than a year after the action initially commenced. Accordingly, the one-year bar does not serve as a basis for ordering a remand, even assuming that the action's time in federal court did not toll the calculation, which it may well have.

Nowhere in the present Motion does Plaintiff articulate specific facts to show that (1) diversity jurisdiction is unavailable or inappropriate in the present action or (2) Morgan Stanley was untimely in filing its Notice of Removal. Therefore, this court will deny Plaintiff's Motion to Remand.

### III. MOTIONS TO DISMISS

#### A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

- 13 -

550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Fed. R. Civ. P. 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see Iqbal, 556 U.S. at 678. Under Iqbal, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth - i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements." Iqbal, 556 U.S. at 681. Second, it

- 14 -

determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." Id.

When a party is proceeding pro se, that party's filings are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). Nevertheless, it is important to note that, in the case of a pro se plaintiff, the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint).

### B. **Analysis**

Plaintiff alleges causes of action all stemming from her allegation that "Saxon wilfully and knowingly reported and furnished fraudulent, false and inaccurate information to one or more of the major credit bureaus alleging that it had initiated legitimate foreclosure proceedings against Plaintiff." (Amended Verified Complaint ("Am. Verified Compl.") (Doc. 4) at 3.) Also alleged by Plaintiff is both Morgan Stanley and Ocwen's complicity in Saxon's alleged misreporting of the foreclosure proceeding. (Id. at 7.)

- 15 -

### 1. **Plaintiff Fails to State a Claim upon which Relief can be Granted**

All of Plaintiff's causes of action are premised on Saxon's alleged publication of "false, inaccurate, and misleading information regarding Plaintiff." (Id. at 1.) Because this court could not ascertain any specific facts, or infer from the facts presented, that Saxon's reporting of foreclosure proceedings was in fact "false, inaccurate, and misleading," this court issued a bench ruling allowing Plaintiff twenty days from November 25, 2014, to file supplemental briefing "stating specific facts upon which she relies to allege that any reporting of the institution of foreclosure proceedings was false, fraudulent, misleading, or not legitimate." (Minute Entry 11/25/2014.) Pursuant to the bench order, Plaintiff filed her Supplemental Briefing on December 15, 2014.[4] (Doc. 27.)

In her Supplemental Briefing, Plaintiff gives a detailed timeline of her mortgage. (Pl.'s Supplemental Br. (Doc. 27) at 5-18.) According to Plaintiff, in January 2006, she secured a mortgage for a residence in Raleigh from First NLC Financial Services, LLC. (Id. at 5.) Plaintiff made payments to Ocwen, who

---

[4] The lack of specific facts is particularly significant here, as Plaintiff had previously filed an identical action against Ocwen and Saxon. Zander v. Saxon Mortg. Service, Inc., No. 1:13CV1141, 2014 WL 4246156, at *1 (M.D.N.C. 2014), aff'd, 599 Fed. Appx. 521 (4th Cir. 2015). However, following remand of that action, Plaintiff filed an amended complaint adding Morgan Stanley and modifying her allegations.

serviced her loan. (Id.) In May 2006, Plaintiff refinanced her mortgage through Decision One Mortgage Company, LLC. (Id.) After refinancing, Plaintiff made her monthly payments to Saxon, who serviced the loan. (Id.) In December 2006, Morgan Stanley acquired Saxon. (Id. at 7.) In June 2007, Plaintiff communicated to Saxon that she intended to sell the property. (Id. at 8.) Saxon did not respond to Plaintiff's communications. (Id.) On or about July 19, 2007, Plaintiff informed Saxon that the property was in escrow and the home would be sold on August 15, 2007. (Id.)

Plaintiff then states that Saxon "initiated or instigated the filing [of] a non-judicial Special Proceedings action, No. 07SP3400, in Wake County Superior Court as a first step to foreclose against Plaintiff's residential property." (Id. at 9.) Plaintiff does not give any specific date for this action. Plaintiff received notice of the hearing date that was set "shortly after the scheduled August 15, 2007, closing." (Id.) Again, Plaintiff fails to assert a specific date. The home was sold on August 15, 2007 and the mortgage was paid in full on August 20. (Id.) Saxon dismissed the foreclosure proceedings on or about August 20, 2007. (Id. at 10.)

In the summer 2013, Plaintiff attempted to secure a mortgage for a residential property in Durham. (Id.) Mortgage

- 17 -

lenders informed Plaintiff that she was denied financing because Plaintiff's credit report showed that Saxon had commenced foreclosure proceedings on her previous property. (Id. at 11.) It is the reporting of the initiation of foreclosure proceedings by Saxon to the Credit Reporting Agencies ("CRAs") that Plaintiff claims is "false, inaccurate, and misleading." (Am. Verified Compl. (Doc. 4) at 1.) However, Plaintiff does not deny that a foreclosure proceeding was initiated. Because Plaintiff has failed to allege that the information furnished by Saxon to the CRAs was in any way false, inaccurate, or misleading, Plaintiff has failed to state a claim upon which this court can grant her relief, just as this court found in the previous action.

### 2. Plaintiff's State Law Claims are Preempted by the FCRA or are Time-Barred

In the alternative, even if Plaintiff has included allegations to show the possibility that the information Saxon provided to the CRAs was false or fraudulent, Plaintiff's state law claims are either preempted by the FCRA or are time-barred and must therefore be dismissed on those grounds.

Plaintiff alleges thirteen claims for relief all based in North Carolina statutory and common law. (Id. at 8-17.) Plaintiff specifically alleges that Saxon is a "'furnisher' of information to credit reporting agencies within the meaning of

- 18 -

FCRA, 15 U.S.C. § 1692s-2."[5] (Id. at 1.) Plaintiff then premises all thirteen of her claims for relief on Saxon allegedly furnishing fraudulent information to CRAs. (See, e.g., id. ¶¶ 37, 44, 70.)

Plaintiff's first through fifth claims for relief all allege violations of the North Carolina Unfair and Deceptive Trade Practices Act, codified at N.C. Gen. Stat. § 75-1.1. (Id. at 8-11.) Plaintiff claims that Defendants' reporting of "an alleged foreclosure sale" to "one or more CRAs" violated N.C. Gen. Stat. § 75-1.1. (See, e.g., id. at 9.) These claims are expressly preempted by the FCRA.

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry." Ross v. FDIC, 625 F.3d 808, 812-13 (4th Cir. 2010) (citing 15 U.S.C. § 1681(a)). Section 1681s-2 of the FCRA "describes the responsibilities of those who report credit information to CRAs. Section 1681s-2(a) explains the '[d]uty of furnishers of information to provide accurate information,' which includes correcting any errors in

---

[5] In her Amended Verified Complaint, Plaintiff cites "FCRA, 15 U.S.C. § 1692s-2." (Doc. 4.)  In Plaintiff's Supplemental Briefing, Plaintiff refers to FCRA, 15 U.S.C. § 1682s-2. Responsibilities of furnishers of information to consumer reporting agencies is codified in 15 U.S.C. § 1681s-2.  (Doc. 27.) Therefore, this court will assume that Plaintiff's references to § 1692s-2 in her Amended Verified Complaint is a typographical error.

reporting." Id. at 813 (quoting 15 U.S.C. § 1681s-2(a)). As a result, a claim under N.C. Gen. Stat. 75-1.1 "runs into the teeth of the FCRA preemption provision" when the claim concerns reporting of inaccurate credit information to CRAs, an area regulated in great detail under § 1681s-2(a)-(b). Id.

Section 1681h(e) provides that, while many state law claims concerning credit reporting are barred by the FCRA, there is one exception:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added). Therefore, under the FCRA, the only way Plaintiff may bring her action under N.C. Gen. Stat. § 75-1.1 against Defendants as "furnishers of information" is if she can plausibly allege and later proves "malice or willful intent to injure" her. See id.

This court utilizes a two-step inquiry when assessing whether or not Plaintiff may go forward with her causes of action under N.C. Gen. Stat. § 75-1.1.

First, we ask whether the claim falls within the scope
of § 1681h(e), which includes only claims "based on
information disclosed pursuant to section 1681g,
1681h, or 1681m of this title, or based on information
disclosed by a user of a consumer report to or for a
consumer against whom the user has taken adverse
action, based in whole or in part on the report." The
second step in the analysis involves determining
whether the "malice or willful intent to injure"
exception to the general bar against state law actions
applies.

Ross, 625 F.3d at 814 (quoting 15 U.S.C. § 1681h(e)).

Plaintiff's claims stem from information provided under 15

U.S.C. § 1681m, which, in part, regulates "[d]uties of users

taking adverse actions on basis of information contained in

consumer reports." See 15 U.S.C. § 1681m(a). Plaintiff alleges

she was denied financing when she attempted to purchase property

due to the information Saxon provided to CRAs. (Am. Verified

Compl. (Doc. 4) at 5.) This indicates that prong one of this

court's inquiry is met.

However, Plaintiff fails on prong two of the inquiry.

Viewing her allegations in the light most favorable to

Plaintiff, Plaintiff has not alleged that any Defendant acted

with "malice or willful intent to injure," as required to meet

the § 1681h(e) exception. Other than liberally using the words

"willful" and "intentional" throughout her pleadings, nowhere

does Plaintiff allege facts to indicate that the information

Saxon provided to the CRAs was false in any way, and if it was

- 21 -

false, that Saxon provided false information with any malice or willful intent to injure Plaintiff.

Plaintiff next asserts six state tort causes of action: (1) Defamation Per Se (Sixth Claim for Relief); (2) Negligent Infliction of Emotional Distress (Seventh Claim for Relief); (3) Intentional Infliction of Emotional Distress (Eighth Claim for Relief); (4) Tortious Interference with Economic Advantage (Ninth Claim for Relief); (5) Fraud (Eleventh Claim for Relief); and (6) Civil Conspiracy (Thirteenth Claim for Relief).[6] (Id. at 11-17.) Using the same analysis, stated supra, Plaintiff's state law tort claims are also preempted by the FCRA. Plaintiff has not alleged that the information provided by Saxon to the CRAs was false in any way. And if it was false, there is no allegation of any malice or willful intent to injure Plaintiff on the part of any Defendant, indicating that Plaintiff's claims do not qualify for the FCRA preemption exception.

Plaintiff's ninth claim for relief asserts Tortious Interference with Economic Advantage stemming from Defendants intentionally "induc[ing] Bank of America, Wells Fargo Bank, and

---

[6] "[I]t [is] undisputed that there is no independent cause of action for civil conspiracy in North Carolina." Feldman v. Law Enforcement Assocs. Corp., 779 F. Supp. 2d 472, 497 (E.D.N.C. 2011) (citing Shope v. Boyer, 268 N.C. 401, 150 S.E.2d 771, 774 (1966)). Because the underlying claims asserted by Plaintiff are preempted or time-barred, this claim cannot survive the motion to dismiss.

- 22 -

several other financial institutions to deny credit to plaintiff" through Defendants' false reporting of foreclosure proceedings. (Id. at 13-14.) However, this claim is also deficient on the merits.

> To make out a claim for tortious interference with prospective economic advantage, the plaintiff must show that the defendant induced a third party to refrain from entering into a contract with the plaintiff without justification. Additionally, the plaintiff must show that the contract would have ensued but for the defendant's interference.

N.C. Motorcoach Ass'n v. Guilford Cnty. Bd. of Educ., 315 F. Supp. 2d 784, 810 (M.D.N.C. 2004) (internal alterations and quotation marks omitted). There are no allegations to support such a claim. Plaintiff alleges she was denied credit based on information that was accurate - a foreclosure proceeding had been initiated. As a result, Plaintiff has not alleged that any Defendant induced any third party to refrain from extending credit to Plaintiff without justification.

Plaintiff's tenth claim for relief asserts a violation of the North Carolina Debt Collection Act, codified at N.C. Gen. Stat. § 58-70-90 et seq. ("NCDCA"). (Am. Verified Compl. (Doc. 4) at 14.) In Ross, the Fourth Circuit held that NCDCA claims stemming from reporting of false credit information are preempted by the FCRA. Ross, 625 F.3d at 817 ("As a preliminary matter, to the extent [the plaintiff's] claims rely on [the

defendants'] reporting of false credit information, they are preempted . . . . [Plaintiff] would be attempting to use the NCDCA as a requirement or prohibition of North Carolina law concerning conduct regulated under section 1681s-2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies." (internal quotation marks omitted) (last alteration in original)). This court finds that Ross is binding here and that Plaintiff's NCDCA claim is preempted.

Plaintiff's twelfth claim for relief is a contract claim for breach of the implied covenant of good faith and fair dealing. (Am. Verified Compl. (Doc. 4) at 15-16.) Plaintiff asserts that Defendants breached an "enforceable mortgage contract" by "improperly foreclosing upon the property and falsely claiming that foreclosure proceedings had been initiated." (Id. at 16.) This court finds two bases for rejecting this argument. First, to the extent Plaintiff's claim is predicated on an improper foreclosure proceeding initiated in August 2007, the claim is time-barred. Generally, North Carolina courts will only recognize breach of good faith claims when dealing with breach of contract claims. See Hogan v. City of Winston-Salem, 121 N.C. App. 414, 422, 466 S.E.2d 303, 308 (1996). Thus, Plaintiff's claim is subject to the three-year

statute of limitations for actions based in contract. See N.C. Gen. Stat. § 1-52(1). Here, the alleged breach occurred in August 2007. (See Pl.'s Supplemental Br. (Doc. 27) at 9 (acknowledging that Plaintiff received notice of Saxon's intent to foreclose and of a hearing date in August 2007).) Because Plaintiff filed the initial action in 2011, any action stemming from an alleged breach that occurred when Defendants commenced foreclosure proceeding is outside of the limitations period.[7] Second, to the extent Plaintiff's claim is predicated on Defendants reporting a foreclosure proceeding to CRAs, that claim is deficient because the contract between the parties was no longer valid. See Kyles v. S. Holding Corp., 5 N.C. App. 465, 468, 168 S.E.2d 502, 504 (1969) (recognizing that payment of the debt voids a deed of trust or mortgage). Thus, Plaintiff's breach of good faith claim does not assert a viable claim for relief or is, as explained supra, preempted by the FCRA.

Ultimately, because Plaintiff has not alleged facts to suggest that the information reported by Defendants to CRAs was in any way false, inaccurate, or misleading, Plaintiff has not stated a plausible claims for relief, and as a result, this case must be dismissed.

---

[7] Plaintiff's additional arguments presented in her supplemental briefing regarding Defendants' legal authority to foreclose does not offset the timeliness issue. (See Pl.'s Supplement in Opp'n to Defs.' Mot. to Dismiss (Doc. 42) at 5-7.)

IV.  **CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. 20) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Ocwen Financial Corporation's Motion to Dismiss Amended Complaint (Doc. 10) is **GRANTED,** that Defendants Morgan Stanley & Company, LLC and Saxon Mortgage Service, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 29) is **GRANTED,** and that this case is **DISMISSED.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 18th day of June, 2015.

_____
          United States District Judge